731 So.2d 1243 (1999)
Roderick Terrell PERRIMAN, Petitioner,
v.
STATE of Florida, Respondent.
No. 92,927.
Supreme Court of Florida.
February 18, 1999.
*1244 Harold Long, Jr., Miami, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, and Terri Leon-Benner and Consuelo Maingot, Assistant Attorneys General, Fort Lauderdale, Florida, for Respondent.
SHAW, J.
We have for review Perriman v. State, 707 So.2d 1151 (Fla. 3d DCA 1998), wherein the district court certified:
Whether reversible error is committed when the court fails to directly answer a jury question, when the correct response would resolve the issue posed in favor of the defendant.
Id. at 1153. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer as explained below and approve the result in Perriman on this issue.
Petitioner Roderick Perriman on May 22, 1996, was picked up at home by a friend, Frank Duke, who was driving a Chevrolet Caprice, and the two left to play basketball. Duke had taken a license *1245 plate from a car he had previously owned and placed it on the Caprice, and the police now stopped the Caprice because of the mismatched tag. As officers questioned Duke outside the car, they observed Perriman inside the car making furtive movements with his hands and feet in the area between the passenger seat and console. When Perriman exited the car, police found a handgun wedged between the passenger seat and console. Perriman was charged with possession of a firearm by a convicted felon, and was tried before a jury. During deliberations, the jury sent the following note to the judge:
Judge
The Law
If a convicted felon is in a car a gun (without knowledge) is that against this law.
The judge then read the note in open court and the following discussion took place:
THE COURT [reading the note]: If a convicted felon is in a car, a gun, without knowledge, is that against the law?
MR. MASTOS [defense counsel]: No.
MS. DEMOS [prosecutor]: I don't think we can answer that.
MR. MASTOS: Judge, the answer you have to know. Without knowledge the answer is no. That is the whole case.
THE COURT: Just hand it to the lawyers, look at it please.
MR. MASTOS: If a convicted felon is in a car, a gun with out knowledge, is that. It is a little bit confusing. Is in a car with a gun parenthesis.
THE COURT: The instruction knowingly had in care, custody, possession a firearm. I can tell them just to follow the instructions.
MS. DEMOS: Follow the instructions they have been given.
MR. MASTOS: They have asked a very simple question. If you are in a car.
MS. DEMOS: I appreciate Mr. Mastos just talking more quietly.
MR. MASTOS: Ms. Demos, you know how emotional I am.
MR. MASTOS: Judge, it summarizes this case in a nutshell. If you are in a car and there is a gun and you have no knowledge of gun [sic] it is not against the law. The Court has to answer that question, no.
THE COURT: Let me see the question. Let me read it again. They just haven't read the instruction. It is very simple.
MR. MASTOS: Judge, would you not agree the answer to that question is no. In other words, if the Court answers no, it is certainly not the Court commenting on the evidence. The Court is answering a question of law. If you are in a car that there is a gun, and you are without knowledge of the gun, you are not guilty.
THE COURT: I think the instruction tells them that. I think the instruction tells them that. I am just going to tell them please
MR. MASTOS: You send in the instructions, correct.
THE COURT: They should be in there. I think they are.
MR. MASTOS: For the record, judge, I will object. I am urging the Court to answer the jury question, no. It is not commenting on the evidence. I think the Court would be simply answering a question of law that the jury has proposed. The fact that the Court is going to tell the jury please refer to the instruction, I think the jury is seeking guidance and I think by us not answering that question is error. So I am making that statement for the record.
THE COURT [to the jury]: Okay. Please refer to the jury instruction. Please refer to the jury instruction. Thank you, please save this note.
The jury returned a verdict of guilty and the court sentenced Perriman as an habitual violent felony offender. The district court affirmed and certified the above *1246 question. Perriman contends that the trial court abused its discretion in responding to the jury query by directing the jury to refer to the standard instructions. We disagree.
The controlling rule of procedure, Florida Rule of Criminal Procedure 3.410, provides that the giving of additional instructions in response to a jury query is within the trial court's discretion:
Rule 3.410. Jury Request to Review Evidence or for Additional Instructions
After the jurors have retired to consider their verdict, if they request additional instructions or to have any testimony read to them they shall be conducted into the courtroom by the officer who has them in charge and the court may give them the additional instructions or may order the testimony read to them. The instructions shall be given and the testimony read only after notice to the prosecuting attorney and to counsel for the defendant.
Fla. R.Crim. P. 3.410 (emphasis added). This rule of procedure was specifically amended in 1972 to make its strictures discretionary rather than mandatory:
1972 Amendment. This is the same as former Rule 3.410, except that the former rule made it mandatory for the trial judge to give additional instructions upon request. The committee feels that this should be discretionary.
Fla. R.Crim. P. 3.410 committee note. The discretionary nature of this rule has been memorialized in our cases,[1] and the Court generally has approved the denial of a request for more specific instructions.[2]
The Florida Standard Jury Instructions in Criminal Cases were designed to eliminateor minimizejuror confusion concerning the applicable law in criminal cases. The instructions were researched and formulated by a committee of experts and then reviewed by this Court in an effort to eliminate imprecision.[3] The charges were designed above all to be accurate and clearand thus to withstand appellate scrutiny. In contrast, an on-thespot instruction formulated by a lone trial judge in the midst of a live proceeding has none of these safeguards and may prove lacking when placed under the microscope of appellate review. To compel trial courts to give such off-the-cuff responses upon requestas Perriman suggestswould invite a recurrence of the pre-1970 problems that gave rise to the standard instructions.
The yardstick by which jury instructions are measured is clarity, for jurors must understand fully the law that they are expected to apply fairly. Where *1247 a jury is confused concerning a point of law, the court must exercise sound discretion. In some cases, the court may properly refer the jury to the standard instructions in toto given in that particular case, but in many cases the preferred practice will be to direct the jury to specific instructions. Where appropriate, the court may also clarify a point of law with a brief, clear response. However, if the trial court feels the need to distill or simplify a standard instruction for the sake of clarity, the matter should be brought to the attention of the experts on this Court's Committee on Standard Jury Instructions in Criminal Cases.
As noted above, the jury in the present case submitted the following handwritten note to the judge:
Judge
The Law
If a convicted felon is in a car a gun (without knowledge) is that against this law.
The judge then told the jury to refer to the jury instructions that had been given:
THE COURT: Okay. Please refer to the jury instruction. Please refer to the jury instruction. Thank you.
The instructions that had been given included the following, which track the Florida Standard Jury Instructions (Criminal) verbatim:
[THE COURT:] Before you can find the Defendant guilty of possession of [a] firearm by a convicted felon, the state must prove the following two elements beyond a reasonable doubt:
1. Roderick Perriman had been convicted of three felonies.
2. After the conviction Roderick Perriman knowingly had in his care, custody, and possession or control a firearm.
. . . .
Care and custody means immediate charge and control exercised by a person over the named object. The terms care, custody and control may be used interchangeably.
To possess means to have personal charge of or exercise the right to ownership, management or control over the thing possessed.
Possession may be actual or constructive. If a thing is in [the] hand of or on the person, or in a bag or container in the hand of or on the person, or is so close as to be within ready reach and is under the control of the person, it is in the actual possession of that person.
If a thing is in a place over which the person has control or in which the person has hidden or concealed it, it is in the constructive possession of that person.
Possession may be joint, that is, two or more persons may jointly have possession of an article, exercising control over it. And in that case, each of these persons is considered to be in possession of that article.
If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed.
If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed.
See Fla. Std. Jury. Instr. (Crim.) 163-64.
On these facts, the trial court did not abuse its discretion in declining to give an additional instruction. The jury's note was written in a cursory style and its meaning was less than precise. An additional ex-temporaneous instruction would have run the risk of further confusing the jury. The judge ultimately told the jury to refer to the standard instructions, and these instructions, which present an accurate statement of the law, provided adequate guidance.[4] While the preferred practice in this case would have been to read to the jurors the specific instructions concerning possession set forth above, we cannot conclude on this record that no reasonable *1248 person would respond as the trial court did.[5]
Accordingly, we answer the certified question as explained herein and approve the result in Perriman on this issue.
It is so ordered.
HARDING, C.J., and WELLS, J., concur.
ANSTEAD, J., concurs with an opinion, in which PARIENTE, J., and KOGAN, Senior Justice, concur.
OVERTON, J., Senior Justice, dissents.
ANSTEAD, J., concurring.
While I agree that the trial court's actions here did not constitute an abuse of discretion, I would encourage trial courts to follow the federal example and give jurors more help when straight forward questions of law are presented. As noted by the district court opinion:
The fact that the trial judge did not err by refusing to answer the question directly does not mean that it would have been wrong, or even that it would not have been preferable to do so. In this respect, we consider the federal rule, which requires a trial judge to answer a jury question with "concrete accuracy," Bollenbach v. United States, 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350, 354 (1946); see also United States v. Karlin, 852 F.2d 968 (7th Cir. 1988), cert. denied, 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989); United States v. Zabic, 745 F.2d 464 (7th Cir.1984), has much to recommend it in terms of what we think is a trial judge's affirmative duty appropriately to assist the jury in rendering a just verdict. See Sutton v. State, 51 So.2d 725 (Fla.1951). (It must be pointed out, however, that these cases reflect the federal regime in which the trial judge, unlike a Florida one, has the right to comment on the evidence.)
Perriman v. State, 707 So.2d at 1152, n. 4. Obviously, this jury could not initially find the answer to their question in the instructions already given them. Otherwise the jury would not have asked for help. We all know that even judges and lawyers sometimes have great difficulty in reconciling and articulating the law, especially on the issue of knowledge in some illegal possession cases.
In this case, no one disputes that the question presented was purely a legal one, and that the answer to the question was that the defendant must have knowledge of the presence of the firearm in order to be convicted. Why not answer this legal question? At the very least the trial court should have responded to the jury's query by re-reading the specific instruction that sets out the elements of the crime and that clearly requires proof of knowledge.
It appears that this Court may have gone too far in inhibiting trial judges from exercising some common sense in assisting juries. Surely, this is the message intended by the polite and subtle suggestion of the district court in its opinion on rehearing that "this case involves highly significant issues concerning the role of the trial judge in criminal prosecutions which should be considered in the light of modern authorities by the Supreme Court." 707 So.2d at 1153 (on motion for rehearing). The threat of reversal for even a slight deviation from pattern charges now prevails over the intuitive and good sense impulse to help. We should utilize this case to encourage courts in the other direction and thereby enhance the process of trial by jury.
PARIENTE, J., and KOGAN, Senior Justice, concur.
NOTES
[1] See, e.g., James v. State, 695 So.2d 1229, 1236 (Fla.) ("This Court has explained that a trial court has wide discretion in instructing the jury, and the court's decision regarding the charge to the jury is reviewed with a presumption of correctness on appeal.") cert. denied, ___ U.S. ___, 118 S.Ct. 569, 139 L.Ed.2d 409 (1997).
[2] See, e.g., Whitfield v. State, 706 So.2d 1, 5 (Fla.1997) (approving trial court's decision to reread the initial instruction in response to the following jury query: "Does life in prison without parole really mean `no parole' under any circumstances. He will never be allowed back into society again?") cert. denied, ___ U.S. ___, 119 S.Ct. 103, 142 L.Ed.2d 82 (1998); Waterhouse v. State, 596 So.2d 1008, 1015 (Fla.1992) (approving trial court's decision to tell the jury that they would have to rely on the evidence and the instructions in response to the following query: "(1) If he's sentenced to life, when would he be eligible for parole? Does the time served count towards the parole time? (2) If paroled from [Florida] would the defendant then be returned to [New York] to finish his sentence there?"); see also Walls v. State, 641 So.2d 381 (Fla.1994) (approving trial court's decision to reread the initial instruction in response to a jury query as to whether emotional disturbance as a mitigator may be presently existing or preexisting); Garcia v. State, 492 So.2d 360 (Fla.1986) (approving trial court's decision to refer the jury to the original instructions in response to jury query as to whether life sentences are imposed concurrently or consecutively).
[3] See generally In re Standard Jury Instructions, 240 So.2d 472 (Fla.1970) (adopting the proposed standard instructions).
[4] See Fla. Std. Jury Instr. (Crim.) 163-64.
[5] See Huff v. State, 569 So.2d 1247, 1249 (Fla.1990) ("[D]iscretion is abused only where no reasonable man [or woman] would take the view adopted by the trial court.").